Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8143 | **DATE** | 9/25/2001 |
| **CASE TITLE** | Cromeens, Hollomon, Sibert, Inc. vs. AB Volvo et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Volvo Construction Equipment North America's ("Volvo CE") request that all defendants except Volvo CE be dismissed is granted. All defendants except Volvo CE are dismissed without prejudice. Defendant's motion (Doc 30-1) for summary judgment is granted as to all claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 2 6 2001 | |
| | Notified counsel by telephone. | date docketed | 45 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | 01 SEP 25 PM 4: 20 | date mailed notice |
| | Date/time received in central Clerk's Office | | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CROMEENS, HOLLOMON, SIBERT, INC., d/b/a CISCO FORD EQUIPMENT, a Texas corporation; CON-EQUIP., INC., a Texas corporation; CON-EQUIPMENT, INC., a Texas corporation; FMS, INC., a Maine corporation; HAMMER EQUIPMENT SALES, LTD., a Canadian corporation; KEIL EQUIPMENT CO., INC., a New York corporation; KORPAN TRACTOR & PARTS, a Canadian partnership; and PERFORMANCE MACHINERY COMPANY, a Montana corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AB VOLVO, a Swedish corporation; VOLVO EXCAVATORS AB, a Swedish corporation; VOLVO CONSTRUCTION EQUIPMENT, NV, a foreign corporation; and VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendants. | 00 C 8143 |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendant Volvo Construction Equipment North America's motion for summary judgment. For the following reasons, the motion is granted.

# BACKGROUND

Beginning in 1992 and 1993, Plaintiffs Cisco Ford Equipment ("Cisco"), Con-Equip, FMS, Hammer Equipment Sales ("Hammer"), Keil Equipment ("Keil"), Korpan Tractor & Parts ("Korpan"), and Performance Machinery Company ("Performance"), hereinafter collectively referred to as "Dealers," entered into agreements with Samsung to serve as dealers of Samsung excavation equipment. Each agreement allowed either party to terminate for enumerated causes as well as for no reason at all, provided the terminating party gave 60 days' notice. Each agreement had a duration of two years, and all were renewed beyond the original time period. The final renewed contracts were amended to include a provision choosing Illinois law to govern all disputes regarding the relationships between the parties.

Defendant Volvo Construction Equipment North America ("Volvo CE") bought Samsung on July 1, 1998, and assumed all of Samsung's contractual obligations to the Dealers. The expiration dates of agreements between Korpan and Volvo and Performance and Volvo were July 29, 1999, and September 1, 1999, respectively. Volvo terminated both dealerships before June 15, 1999. The other agreements had expired by their own terms before Volvo terminated the dealerships. Cisco's agreement expired on August 10, 1998, Con-Equip's in October 1998,

FMS's and Hammer's on March 31, 1999, and Keil's on May 3, 1999. The corresponding Volvo terminations occurred on December 31, 1999; May 31, 1999; November 1, 1999; May 15, 1999; and June 7, 1999. Volvo informed some customers of the Dealers that the relationships would be ending. They also informed customers that the Samsung line was going to be discontinued and the Dealers would not be able to provide service in the future for Samsung products.

The Dealers brought suit in Arkansas state court, claiming that Volvo's termination was either in breach of their individual agreements or unlawful under various states' laws, including the Illinois Franchise Disclosure Act, 815 ILCS 705/1 et seq. Volvo removed the action to the Western District of Arkansas, and the case was then transferred to our court.

Volvo asserts that, pursuant to the aforementioned provisions addressing termination without cause, it was entitled to terminate the dealerships at any time without cause and has moved for summary judgment of the Dealers' claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no

genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

To begin, the court addresses Volvo CE's request that all defendants except Volvo CE be dismissed because as parent companies and corporate executives, they were not involved in the events or decisions that gave rise to this dispute. The Dealers agree to their dismissal. We therefore dismiss without prejudice AB Volvo; Volvo Excavators, AB; and Volvo Construction Equipment, NV, from this action.

In addition, the Dealers have agreed with Volvo CE's contention that we should dismiss, with prejudice, their claim for misappropriation. Accordingly, we dismiss the claim with prejudice and turn to the remaining counts.

**A. Choice of Law**

This case involves only questions of state law, as our jurisdiction over this matter rests solely on the diversity of the parties.[1] 28 U.S.C. § 1332(a). A federal court sitting in diversity considers state law causes of action and therefore must apply state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal court also must apply the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). However, when a case has been transferred from another district court, the transferee court must act as though it sits in the state of the transferring court and apply the choice-of-law rules of that state rather than its home state. Van Dusen v. Barrack, 376 U.S. 612 (1964).

In this case, we are a federal court sitting in diversity over an action that was transferred to us from the Western District of Arkansas. Therefore, for the purposes of this case, we must apply Arkansas choice-of-law and decide this case as if we were an Arkansas state court.

---

[1] The Dealers hale from Texas, Maine, Alberta, New York, Saskatchewan, and Montana. Volvo CE is a Delaware corporation with its principal place of business in North Carolina. (Defs. Stmt. of Undisp. Facts, paras. 4, 8-15).

Arkansas choice-of-law rules allow contracting parties to choose the law that will apply to their relationship as long as the choice bears a reasonable relationship to the transaction and does not run afoul of Arkansas public policy. Arkansas Appliance Distributing Co. v. Tandy Electronics, Inc., 292 Ark. 482, 485 (1987). In this case, all of the contracts contained a provision choosing Illinois law. The choice of Illinois law bears a strong relationship to the transaction in that Samsung was located in Illinois and much of the training and support provided to the Dealers took place in Illinois. (Defs.' Stmt of Undisp. Facts, para. 3; Defs.' Exh. 9, para. 7). Furthermore, the Illinois law that applies to dealerships tracks Arkansas substantive law, which is our best indication of Arkansas public policy in this area. See, e.g., Ark. Stat. § 4-72-204(a)(1); Ark. Stat. § 4-72-304. In addition, the Arkansas Franchise Practices Act is limited to in-state franchises, Ark. Stat. § 4-72-203, as is the Illinois Franchise Disclosure Act ("IFDA"). 815 ILCS § 705/1 et seq; Highway Equipment Co. v. Caterpillar, Inc., 908 F.2d 60, 63 (6th Cir. 1990). We can safely assume that no fundamental Arkansan public policy will be subverted by the application of similar Illinois laws.

## B. Applicability of the Dealership Agreements

Volvo argues its motion under the assumption that all of the Dealership Agreements dictate the outcome of this matter. However, the Agreements are only

relevant to our inquiry if they controlled the parties' relationships at the time of termination.

It is undisputed tht the Korpan and Performance contracts were still in force at the time of termination, so it goes almost without saying that the propriety of Volvo's actions must be measured according to the contractual terms. The contracts between Volvo and the other five Dealers, on the other hand, had expired by their own terms before the terminations occurred. As such, we cannot automatically look to the terms of the expired contracts. These five plaintiffs insist that the slate was wiped clean upon the agreements' termination and thus that the contractual terms are irrelevant to our inquiry. They claim that the usage of trade in the construction equipment franchise industry should dictate the parties' respective obligations. We disagree. Evidence of industry practice and course of dealing in a case like this does not create a genuine issue of material fact. Equity Group, Ltd., v. Painewebber, Inc., 839 F.Supp. 930, 934 (D.D.C. 1993). Rather, one of two situations arose when the contracts expired. Either the parties continued to perform under the same terms as those contained in the expired agreement, Foster v. Springfield Clinic, 410 N.E.2d, 604, 607 (Ill. App. Ct. 1980), or the relationship became one terminable at will. Restatement (Second) of Contracts, § 33 cmt. d (1982). Under either scenario, Volvo had a right to terminate the relationship

without cause. The characterization of the nature of the relationship is therefore unimportant, as it does not affect the result in this case. Volvo asserts that the terms of the Agreements continued to govern the parties' relationships even after their expiration.

*1. Contract Claims*

In addressing the Dealers' claims for breach of contract, the parties focus on the applicability of the provisions of the IFDA. Because the contract indicated that it would be governed by Illinois law, the Dealers assert that they are protected by the provisons of the IFDA, specifically the termination-with-cause and antiwaiver provisions. 815 ILCS §§ 705/19, 41.

The IFDA does not apply to this dispute for two reasons. First, contractual choice-of-law provisions are intended to be gap fillers, supplying controlling law where the parties have not supplied thier own transactional rules in specific contractual terms. Infomax Office Systems, Inc., v. MBO Binder & Co. of Amer., 976 F.Supp. 1247, 1254-55 (S.D. Iowa 1997); Restatement (Second) of Conflict of Laws § 187 cmt. c (1971). In other words, we will not allow a general choice-of-law provision to trump a specific contradictory term of a bargained-for contract between sophisticated parties. Second, it is well established that the IFDA and similar franchise statutes operate to protect only in-state franchisees. 815 ILCS §§ 705/2, 19; Dayan v. McDonald's Corp., 466 N.E.2d 958, 973 (Ill. App. Ct. 1984)

(holding that Illinois legislature did not intend IFDA to reach extraterritorially); Wright-Moore v. Ricoh, 908 F.3d 128 (7th Cir. 1990) (allowing Indiana franchisee to be protected by Indiana franchise statute even though parties had chosen New York law); Highway Equipment, 908 F.2d at 62-64 (applying all of Illinois law except IFDA to non-Illinois franchisee); McDonald's Corp. v. C.B. Mgmt. Co., 13 F.Supp.2d 705, 713-714 (N.D.Ill. 1998) (same); In re Montgomery Ward Catalog Sales Litigation, 680 F.Supp. 182 (E.D. Pa. 1987) (same); Hengel, Inc., v. Hot 'n Now, Inc., 825 F.Supp. 1311 (N.D. Ill. 1993) (applying IFDA protections to Illinois franchisee even though parties chose Michigan law); Flynn Beverage, Inc., v. Seagram & Sons, Inc., 815 F.Supp. 1174 (C.D. Ill. 1993) (applying IFDA protections to Illinois franchisee even though parties chose New York law). As such, we decline to apply the antiwaiver provision of the IFDA to invalidate portions of the Dealers' agreements, as they are all located outside of the state of Illinois.

The Dealers raise the additional argument that the implied covenant of good faith and fair dealing forbids Volvo to exercise its contractual termination rights. We find this argument unconvincing. As the name states, the implied covenant of good faith and fair dealing is not a condition that appears on the face of a contractual agreement. Rather, an implied provision is one that is read in when no express language addresses a given issue. That is not the case here. The Dealer

Agreements specifically stated that termination could be for any reason or no reason at all. (Defs.' Exh. 5, para 22.3; Defs.' Exh. 7, para. 22.3). That type of provision contradicts the presence of an implied covenant of good faith.

The Dealers are correct in asserting that the covenant of good faith and fair dealing limits the discretion of parties to a contract that contains no contrary provisions. Dayan, 466 N.E.2d, at 972-973. Contracts such as the ones in this case, however, remove these limits with the provisions that they contain, allowing either party to exercise unfettered discretion in terminating the contractual relationship. Although the Dayan court noted that courts in New Jersey and West Virginia have gone as far as to invalidate contract provisions that allow termination without cause such as the one in this case, the Illinois courts have thus far only considered contracts that are silent on the issue of termination without cause. We will not extend our reach into the parties' contract in such an invasive manner without a clear indication that Illinois law requires us to do so. The Dealers argue that Dayan is such a mandate, but we disagree. The court in Dayan held that the franchisor in that case did have good cause for terminating the franchise and thus had no reason to address the effect of a termination without cause on good faith. Dayan, 466 N.E.2d, at 974. Accordingly, we find that Volvo acted within its contractual rights when it terminated the relationships with the Dealers, and we therefore grant Volvo summary judgment that their termination did not breach any of the Dealership Agreements.

*2. Quasicontractual Relief*

Volvo also seeks summary judgment that the Dealers are precluded from seeking quasicontractual relief. Quasicontractual relief is available only where there is no express contract between the parties. Barry Mogul and Assocs. v. Terrestris Development Co., 643 N.E.2d 245, 252 (Ill. App. Ct. 1994) (quoting Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp., 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982)). Here, the parties clearly had express contracts. Therefore, the fallback remedies of quasicontract are unavailable to the Dealers and Volvo's motion for summary judgment as to those claims is accordingly granted.

*3. Tortious Interference*

As to the tortious interference claim with regard to its relationship with the Dealers, Volvo is correct in asserting that a party cannot tortiously interfere with its own contractual relationship. Douglas Theater Corp. v. Chicago Title & Trust Co., 681 N.E.2d 564, 570 (Ill. App. Ct. 1997). Volvo's motion for summary judgment on that issue is therefore granted.

The Dealers' claim that Volvo interfered with their relationships with customers requires a closer examination. In Illinois, five elements make up the tort of interference with contractual relations. Hi-Tek Consulting Servs. v. Bar-Nahum, 578 N.E.2d 993, 997 (Ill. App. Ct. 1991). First, there must be a valid and enforceable contract. Id. Second, the defendant must be aware that the contract

exists. Id. Third, the defendant must intentionally and without justification induce a breach of the contract. Id. Fourth, the defendant's wrongful conduct must actually cause a breach. Id. Finally, the plaintiff must suffer damages. Id. To withstand a motion for summary judgment of a tortious interference claim, the plaintiff must show a lack of justification to maintain the existence of the third element. R.J.N. Corp. v. Connelly Food Products, Inc., 529 N.E.2d 1184, 1190-91 (Ill. App. Ct. 1988). Unlike acts of fraud, deceit, physical violence, or deliberate disparagement, supplying truthful information to parties to a contract or prospective parties does not qualify as an unjustified act that would lead to liability for tortious interference. Soderlund Bros., Inc., v. Carrier Corp., 663 N.E.2d 1, 9-10 (Ill. App. Ct. 1995). The Dealers have not managed to create a material issue of fact on the issue of Volvo's lack of justification for taking the actions that they did, so we must grant Volvo's motion for summary judgment as to those claims as well.

## CONCLUSION

For the reasons stated above, we grant Defendant's motion for summary judgment as to all claims.

_____
Charles P. Kocoras
United States District Judge

Dated: September 25, 2001