# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8143 | **DATE** | 10/28/2004 |
| **CASE TITLE** | Cromeens, Hollomon, Sibert, Inc. et al vs. AB Volvo et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. Volvo's motion for leave to file surreply to plaintiff's motion for leave to amend, is granted. **ENTER MEMORANDUM OPINION:** FMS's motion (Doc 59-1) to amend the complaint is denied. Simultaneaus cross-motions for summary judgment to be filed by November 29, 2004. Simultaneaus answers to said motions due December 13, 2004. No replies. Ruling set for January 20, 2005 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 29 2004 date docketed | |
| | Notified counsel by telephone. | | | 69 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 2004 OCT 28 PM 4:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CROMEENS, HOLLOMON, SIBERT, INC., d/b/a CISCO FORD EQUIPMENT, a Texas corporation; CON-EQUIP, INC., a Texas corporation; CON-EQUIPMENT, INC., a Texas corporation; FMS, INC., a Maine corporation; HAMMER EQUIPMENT SALES, LTD., a Canadian corporation; KEIL EQUIPMENT CO., INC., a New York corporation; KORPAN TRACTOR & PARTS, a Canadian partnership; and PERFORMANCE MACHINERY COMPANY, a Montana corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AB VOLVO, a Swedish corporation; VOLVO EXCAVATORS, AB, a Swedish corporation; VOLVO CONSTRUCTION EQUIPMENT, NV, a foreign corporation; and VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendants. | DOCKETED<br>OCT 2 0 2004<br><br>00 C 8143 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Plaintiff FMS, Inc. ("FMS") to amend its complaint pursuant to Fed. R. Civ. Proc. 15(a). For the reasons set forth below, the motion is denied.

## BACKGROUND

At its inception, this case was substantially more complicated than it is now. In the early to mid 1990s, various companies in several states contracted with Samsung Construction Equipment America Corporation ("Samsung"), the predecessor in interest to Defendant Volvo Construction Equipment North America, Inc. ("Volvo"), to serve as dealers of Samsung construction equipment. Prospective plaintiff Frank Martin Sons, Inc. ("Sons") signed an agreement with Samsung in late 1994 that established Sons as an authorized, non-exclusive dealer of "All Samsung Construction Equipment Products" for a designated sales area. The agreement had a term of two years and expired on December 28, 1996.

Both before and after becoming a Samsung dealer, Sons was also a dealer of John Deere equipment. It appears that the sale and service of John Deere equipment comprised a substantial amount of Sons' business. In 1995, Deere expressed reservations about Sons offering products of Samsung, its competitor. To allay these concerns, Sons' owners formed a new corporation, FMS, to handle the Samsung equipment sales. Apparently the division between Sons and FMS was not crystal clear. However, it is undisputed that in March 1997, Samsung signed a two-year dealership agreement with FMS only, establishing FMS as an authorized, non-exclusive dealer of

"All Samsung Construction Equipment for sale in North America" for a designated sales area.

In July 1998, Volvo bought Samsung and assumed its contractual obligations with the dealers. About a year later, in March 1999, the agreement between FMS and Samsung expired. Thereafter, Volvo informed FMS that it intended to discontinue the Samsung line of equipment. FMS and six other dealers (from states other than Maine) filed suit in Arkansas state court in March 2000, alleging breach of contract and violations of various state franchise and trade practice laws. The case was removed to federal court in the Eastern District of Arkansas and then transferred to this court. After we entered summary judgment on the whole of the complaint, the parties appealed. The Seventh Circuit affirmed our decision save whether Volvo's actions with respect to FMS were done for good cause, as required by the Maine Franchise Laws for Power Equipment, Machinery and Appliances. Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376 (7th Cir. 2003).

After the case was remanded, that statutory cause of action was the sole remaining claim and FMS consequently the sole remaining plaintiff. The parties conducted both fact and expert discovery. On the day that expert discovery closed, FMS moved for leave to amend its complaint to add Sons as a plaintiff pursuant to Fed. R. Civ. Proc. 15(a).

## LEGAL STANDARD

Fed. R. Civ. Proc. 15(a) provides that, once a responsive pleading is served, a plaintiff must obtain leave of court to amend its complaint. The rule mandates that leave be given freely "when justice so requires," but if there is an apparent reason not to permit the amendment, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), the motion may be denied. See, e.g., Payne v. Churchich, 161 F.3d 1030, 1036-37 (7th Cir. 1998). The decision whether to grant or deny a motion for leave to amend is committed to the sound discretion of the district court. Perrian v. O'Grady, 958 F.2d 192 (7th Cir. 1992).

## DISCUSSION

FMS has not previously sought to amend its complaint. Nor has there been any contention that the instant motion was filed in bad faith or with a dilatory motive. Thus, we restrict our analysis to whether FMS unduly tarried in presenting the proposed amendment, whether Volvo is unduly prejudiced by the addition of Sons, and whether the amendment is futile because it will ultimately succumb to a motion to dismiss.

## 1. Undue Delay

Because the timing of the motion is a consideration, we must place it in its proper temporal perspective. The initial complaint was filed four years and two months before the motion to amend. The applicable statute of limitations for any action filed under the Maine franchise law expired in mid 2002.[1] 10 M.R.S.A. § 1369. The period for fact discovery ended one month before the instant motion was filed, after a one-month extension. Expert discovery ended the same day that the motion was filed.

FMS claims that we should consider only the period since the discovery cut-off date was set, trimming the duration of the delay to six months. We disagree. Although fact development may not have started in earnest before that point, four courts and attorneys for both sides expended significant efforts prior to that point, so it is appropriate to consider the entire lifespan of the case. Furthermore, the theory of

---

[1] The latest possible point that Sons' cause of action could have accrued is September 10, 2000, the date on which Volvo ceased to fulfill any further parts orders from FMS or Sons. If we consider this the starting point of the two-year statute of limitations, our entry of final judgment occurred one year and 16 days thereafter, leaving more than 11 months unexpired in the statutory period. Assuming that the statute was tolled during the pendency of the appellate proceedings, the instant motion, filed less than 9 months after the appellate decision was rendered could conceivably be considered timely. However, FMS does not raise this argument, choosing instead to argue only relief from the statute's operation under the relation back doctrine. As a result, if this avenue had been open to Sons, an issue upon which we offer no opinion, it is now waived. See In re Kontrick, 295 F.3d 724, 735 (7th Cir. 2002); Stern v. Cintas Corp., 319 F. Supp. 2d 841, 857 (N.D. Ill. 2004).

liability upon which Sons wishes to rely is not novel, nor are the new allegations the result of facts that have only recently come to Sons' attention. See Murphy v. White Hen Pantry Co., 691 F.2d 350, 354 (7th Cir. 1982). Rather, the information required to formulate the new allegations was known to both FMS and Sons well before this suit was filed. The excessive amount of time that has elapsed and the extensive case development that took place before presentment of the instant motion, in combination with the fact that FMS has offered no principled reason why it did not act more expeditiously in bringing Sons into the case, lead to a single conclusion: FMS's delay in seeking this amendment is undue.

While the foregoing counsels strongly against allowance of the amendment, we cannot cease our analysis with this conclusion. The Seventh Circuit has explicitly held that undue delay alone is an insufficient reason to deny leave to amend. See Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 793 (7th Cir. 2004). In addition, other courts faced with similar situations have concluded that the plaintiff's reason (or lack thereof) for delaying its amendment is not an appropriate focus in deciding whether to allow an amendment. See, e.g., Olech v. Village of Willowbrook, 138 F. Supp. 2d 1036, 1044 (N.D. Ill. 2000). Thus, we turn our attention to the remaining factors: undue prejudice and futility of the amendment.

## 2. Undue Prejudice to Volvo

Although undue delay in and of itself will not prevent amendment of a complaint, the greater the delay involved, the more the delay itself becomes prejudicial and the less showing of additional prejudicial factors is necessary to present an insurmountable obstacle for the plaintiff. See Tamari v. Bache & Co., 838 F.2d 904, 909 (7th Cir. 1988). Despite the extreme delay, FMS insists that there is no prejudice at all to Volvo in this instance for several reasons. First, FMS contends that Samsung and Volvo were aware of the relationship between FMS and Sons even before the suit was filed. Second, FMS argues that its attribution of actions within the original complaint to FMS before it was even formed, which were in fact taken by Sons, should have put Volvo on notice that alleged damage to Sons' business could become an issue in the case. Consequently, urges FMS, Volvo should have prepared its defense with an eye toward Sons' inclusion. These arguments are unconvincing. Even if Volvo was aware of the relationship between the two companies, the original complaint made no reference whatsoever to Sons. It relied solely on the 1997 agreement, to which Sons was not a party. This is not a case akin to Olech, where the complaint was replete with specific references to the party who later sought to be added as a plaintiff. Olech, 138 F. Supp. 2d at 1045. Most importantly, as noted above, the two-year period set by the Maine statute of limitations for any potential franchise claim by Sons came and went

with no action by Sons. At that point, Volvo was entitled to assume that no claim would be filed, and to now reexpose it to potential liability is plainly prejudicial.[2] See Wood v. Woracheck, 618 F.2d 1225, 1230 (7th Cir. 1980).

Next, FMS argues that Volvo will suffer no prejudice because of the way discovery was performed. Specifically, it states that Volvo requested and received documents pertaining to Sons' business. Moreover, Volvo deposed the owners of FMS, who are also the owners of Sons, and questions specific to Sons were asked. We have no doubt that FMS fully complied with its discovery obligations with respect to the requests it has received. However, it is no stretch of the imagination that the preparation of discovery requests, review of materials given in response, and Volvo's choice of deponents and questions posed to them would have been different if Sons had been a plaintiff during the earlier discovery period. Given that reality, a reopening of discovery is likely, if not inevitable, if the amendment is allowed. This added expense and effort would be unduly detrimental to Volvo.

Finally, FMS points out that no trial date has been set yet. While this is true, it is certainly not dispositive of the issue of prejudice to Volvo, especially in light of the

---

[2] Of course, this factor would not be prejudicial to Volvo if the amendment could relate back to the originally filed complaint, but as discussed in the next section, that doctrine does not apply to the present circumstances.

-8-

additional examples of prejudice discussed above and the substantial amount of water that has passed under the bridge in this case.

### 3. Futility of Amendment

The combination of the undue delay and prejudice described above provides a sufficient basis to deny FMS's motion to amend, but the content of the proposed amendment lends additional support to our decision. The noted statute of limitations problem renders the added claim immediately susceptible to a motion to dismiss, making the change an exercise in futility.

FMS attempts to salvage the viability of Sons' claim by invoking Fed. R. Civ. Proc. 15(c), which provides that an untimely amendment can be treated as though it were filed on the date of a prior timely pleading if certain conditions are satisfied. In Olech, the court enumerated these conditions in the form of a four-factor test. Olech, 138 F. Supp. 2d at 1044. The first factor examines whether the new plaintiff's claim arises out of the same conduct, transaction, or occurrence that formed the basis of the original complaint. Id. The second looks at the identity of interest between the original and new plaintiffs. Id. The third queries if the defendant has had fair notice of the proposed claim. Id. The final factor focuses on the prejudicial effect that the addition of the new plaintiff would have on the defendant. Id. Although FMS

contends that all four of these factors weigh in its favor, it is apparent that it satisfies only the second.

Because of the decisions already rendered in this case, Sons can potentially sue Volvo only under the Maine statute that governs agreements between franchisors and Maine franchisees. FMS concedes, as it must, that Sons was not a party to the 1997 agreement between FMS and Samsung, which is the sole agreement of a Maine franchisee referenced in the original complaint. In its reply,[3] FMS explicitly states that Sons operated pursuant to a different agreement with Samsung, one whose terms were not reduced to writing but that were part of a larger, holistic "Dealership Agreement"[4] with Samsung that included both FMS and Sons.

We do not accept this rationalization. According to FMS, the contracts involved supplying different goods to different entities. Given the nature of the goods involved (completed construction equipment as opposed to parts and service), the consideration almost certainly varied. The terms of one agreement are reduced to an integrated

---

[3] FMS's initial brief was somewhat ambiguous as to whether Samsung's agreement with Sons was separate from its written contract with FMS. The reply clarifies this point.

[4] This assertion cannot stand in light of the integration clause of the 1997 agreement, FMS's own contention that the agreements were terminated at different times, and the fact that the proposed complaint treats the agreements as though they were one.

written document; the terms of the other were dictated by multiple interactions between several different people over a period of more than three years. FMS specifically notes that "the provisions in the FMS Agreement refer only to the relationship between [Samsung] and FMS, and speak not at all about the relationship between [Samsung] and Sons." Reply, at 4. In short, the new claim and the original claim arose from different conduct, transactions, and occurrences.[5] See Morgan Distributing Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 994 (8th Cir. 1989). As a result, in addition to the problems noted above on the same topic, the original complaint did not give fair notice to Volvo of the proposed addition of Sons and claims related to the alleged second agreement. Moreover, given the lack of a written contract between Sons and Samsung, much additional discovery would likely be necessary to determine the precise parameters of an arrangement reached through an extended period of interactions. The addition of Sons would thus prejudice Volvo, and Rule 15(c) does not allow the proposed amendment to relate back to the original claims. Without relation back, the new claims cannot withstand a challenge on statute of limitations grounds, and the filing of the amendment would be a futile act.

---

[5] For this same reason, Sons' proposed addition does not satisfy the requirements of Fed. R. Civ. Proc. 20(a).

In sum, FMS unduly delayed in bringing Sons into the case. The presence of the additional plaintiff would work substantial prejudice to Volvo, and the amendment would be futile. For all these reasons, justice requires that FMS not be granted leave to amend its complaint.

## CONCLUSION

Based on the foregoing analysis, FMS's motion to amend the complaint is denied.

_Charles P. Kocoras_
Charles P. Kocoras
Chief Judge
United States District Court

Dated: OCT 2 8 2004